1999 ND 194

**Tammy J. MYERS, k/n/a Tammy J. Meissner, Plaintiff and Appellee,**

v.

**Clay A. MYERS, Defendant and Appellant.**

**No. 990075.**

Supreme Court of North Dakota.

Oct. 20, 1999.

Henry H. Howe, Howe & Seaworth, Grand Forks, ND, for plaintiff and appellee.

Kipton R. Van Voorhis, Spaeth, Thelen, Van Voorhis & Jasmer, Grand Forks, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Clay Myers appealed from the order denying his motion for change of custody. We affirm.

I

[¶ 2] Tammy Meissner and Clay Myers were divorced in September 1992. Tammy and Clay were awarded joint legal custody. Tammy was awarded sole physical custody of the couple's three children, Landra, 17, Shanna, 15, and Cole, 13. Clay was awarded visitation continuously in the summers and on alternating holidays. Tammy married John Meissner and they subsequently divorced. Tammy and John have one son together, John Allen, age four, who lives with Tammy. She currently lives in Grand Forks, North Dakota and is employed by Farmers Insurance Group. Clay has remarried and now resides in Anacortes, Washington. He is a self-employed contractor with TransAlliance Field Services.

[¶ 3] In July 1998, Clay filed a motion for change of custody in the district court of Grand Forks County. The stated reason for the motion was that the three children would prefer to live with their father. A custody investigator was agreed to by counsel and appointed by the court. A hearing was held on December 3, 1998 to decide Clay's motion to modify custody and Tammy's motion to modify child support filed subsequent to Clay's motion. The custody investigator recommended a change of custody for two reasons. First, the children believe there is too much reverse parenting going on with Tammy. Secondly, the children believe Tammy does not listen to them, that she is out too much, and she does not protect them. On December 16, 1998, the district court denied Clay's motion to change custody of the children. Because there was very little information on Clay's financial status, the district court took the child support issue under advisement pending further information. Clay appealed the denial of his motion for change of custody.

II

[¶ 4] Tammy contends this court lacks jurisdiction to hear this appeal because the appellant did not file a notice of appeal with the clerk of the trial court within 60 days of notice of entry of judgment. We are without jurisdiction to consider an appeal after the time for appeal has expired under N.D.R.App.P. 4(a). *Bye v. Federal Land Bank Ass'n,* 422 N.W.2d 397, 399 (N.D.1988). Although the notice of appeal was not filed within 60 days of notice of entry of judgment, a motion to extend time was granted by the district court based on excusable neglect. *See* N.D.R.App.P. 4(a) (stating "[u]pon a show-

ing of excusable neglect, the trial court may extend the time for filing the notice of appeal by any party for a period not to exceed 30 days from the expiration of the time otherwise prescribed for appeal by this subdivision. . . .").

[¶ 5] " 'A motion for extension of time based upon excusable neglect is addressed to the sound discretion of the trial court, and the court's determination will not be set aside on appeal absent an abuse of discretion.' " *Nastrom v. Nastrom,* 1998 ND 75, ¶ 6, 576 N.W.2d 215 (quoting *Routledge v. Routledge,* 377 N.W.2d 542, 547 (N.D.1985)). A trial court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably. *Routledge,* 377 N.W.2d at 547. Although it is not clear from the trial court's order extending the time to appeal whether excusable neglect was established, we will assume it was, since we have a strong preference for deciding cases on the merits. *First Nat. Bank of Belfield v. Candee,* 488 N.W.2d 391, 396 (N.D.1992).

### III

[¶ 6] Clay argues changed circumstances exist that warrant a change in custody. Modification of a custody award requires a two-step process. *Mertz v. Mertz,* 439 N.W.2d 94, 96 (N.D.1989). A trial court must determine: 1) whether there has been a significant change of circumstances since the divorce and custody determination and; 2) whether the change in circumstances compels a change in custody to further the best interests of the child. *Mosbrucker v. Mosbrucker,* 1997 ND 72, ¶ 6, 562 N.W.2d 390. "The burden of proving these two elements is on the moving party." *Id.* The decision of the trier of fact will not be set aside unless it is clearly erroneous. *Id.* at ¶ 5. "A finding of fact is clearly erroneous if there is no evidence to support it, if it is clear to the reviewing court that a mistake has been made, or if the finding is induced by an erroneous view of the law." *Id.*

[¶ 7] The district court found Clay's remarriage and the preference of the children to live with their father constituted a material change in circumstances. However, the district court concluded these changes in circumstances did not require a change in custody. A mature child's custody preference may be particularly significant to the trial court in deciding whether there has been a change in circumstances and in deciding what is in the child's best interests. *Mosbrucker,* at ¶¶ 10–11. Although a child's preference is a significant factor in the calculus, it is not necessarily determinative. *Klose v. Klose,* 524 N.W.2d 94, 96 (N.D.1994).

[¶ 8] Clay asserts the trial court failed to consider the children's preference to live with their father in rejecting the motion for change of custody. The record demonstrates the district court did consider the preference of the children, as it made specific reference to the children's preference in its opinion. However, the district court, in deciding what was in the children's best interests, found other factors compelling.

[¶ 9] The court observed Clay has overly involved the children in the custody proceedings, causing the children to be concerned with financial matters. The court found Clay discussed the issue of child support and Tammy's dating with the children. The trial court also focused on the interest in having a stable custodial home. *See* N.D.C.C. § 14–09–06.2(d); *Hagel v. Hagel,* 512 N.W.2d 465 (N.D.1994) (stating that after balancing the child's best interests and stability of the custodial parent, the trial court must, nevertheless, conclude that a change in the status quo is required). The trial court found the children have done relatively well in school and Tammy has provided a stable home.

[¶ 10] In a motion to modify custody, the best interests of the child analysis requires two steps not required in an original custody decision. *Id.* First, the best interests of the child factors "must be 'gauged against the backdrop of the stability of the child's relationship with the cus-

todial parent,' because that stability is the primary concern in a change of custody proceeding." *Id.* (quoting *Barstad v. Barstad,* 499 N.W.2d 584, 587 (N.D.1993)). "Second, after balancing the child's best interests and stability with the custodial parent, the trial court must conclude that a change in the status quo is *required.* . . . A child is presumed to be better off with the custodial parent, and close calls should be resolved in favor of continuing custody." *Id.* (emphasis in original). A change should only be made when the reasons for transferring custody substantially outweigh the child's stability with the custodial parent. *Id.*

[¶ 11] In view of the reasoning expressed by the trial court, we conclude it is not clearly erroneous to find it is in the best interests of the children to continue the present custodial arrangement.

### IV

[¶ 12] Tammy argues Clay should pay her attorney's fees for both the trial court and the appeal process because the motion for change of custody was brought in bad faith and Tammy cannot afford the legal bills.

[¶ 13] "An award of attorneys fees in litigation about marital obligations between former spouses does not depend entirely on the merits of each position, although whether one party's actions unreasonably increased the time and effort spent on the dispute can be a factor." *Pozarnsky v. Pozarnsky,* 494 N.W.2d 148, 151 (N.D.1992). In view of the record, we do not believe this appeal was brought in bad faith; but an award of attorneys fees in a marital dispute does not ordinarily depend on lack of good faith. *Id.* at 151. Instead, the principal standards are one parent's need and the other parent's ability to pay. *Id.* " 'The court should consider the property owned by each party, their relative incomes, whether property is liquid or fixed assets, and whether the action of either party has unreasonably increased the time spent on the case.' " *Quamme v.*

*Bellino,* 540 N.W.2d 142, 148 (N.D.1995) (quoting *Bakes v. Bakes,* 532 N.W.2d 666, 669 (N.D.1995)). "We will not overturn an award of attorney fees unless the appellant affirmatively establishes the trial court abused its discretion." *Id.*

[¶ 14] We prefer the trial court to make the initial determination of an award of attorney's fees on appeal. *McIntee v. McIntee,* 413 N.W.2d 366, 367 (N.D.1987). The trial court is in the better position to consider special factors relevant under N.D.C.C. § 14–05–23 relating to the financial status of the parties and the need for and ability to pay attorney's fees. *Id.*

[¶ 15] We affirm.

[¶ 16] CAROL RONNING KAPSNER, DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, JJ., concur.