2001 ND 138

**Shari SELZLER, Plaintiff
and Appellant,**

v.

**Terry SELZLER, Defendant
and Appellee.**

No. 20000247.

Supreme Court of North Dakota.

July 20, 2001.

Lynn M. Boughey, Boughey Law Firm, Minot, for plaintiff and appellant.

Michael S. McIntee, McIntee Law Firm, Towner, for defendant and appellee.

NEUMANN, Justice.

[¶ 1] Shari Selzler appealed from an amended divorce judgment changing physical custody of the parties' ten-year-old daughter to Terry Selzler. We conclude the trial court did not err in changing custody, and we affirm.

## I

[¶ 2] The Selzlers were married in 1985. When they divorced in January 1996, the decree granted Shari sole legal and physical custody of a thirteen-year-old who was Shari's natural and Terry's adoptive daughter. The parties were granted joint legal custody of their natural daughter, a six-year-old, and Shari was granted care, custody and control of that child. Terry was granted reasonable and liberal visitation rights with the younger daughter.

[¶ 3] Terry was employed as a farm laborer and Shari was employed as a social worker for Pierce County, at one time as a child abuse and neglect investigator. The

latter years of the marriage were marred by problems. In December 1994, a juvenile court referee found the older daughter to be a deprived child based upon the referee's finding that Terry had sexually abused her on four occasions. The referee recommended the older daughter's care, custody and control be placed with Pierce County Social Services for one year. Criminal charges based on the older daughter's allegations of sexual abuse were not pursued against Terry.

[¶ 4] After the divorce, Shari experienced disciplinary problems with the older daughter. The older daughter quit school before completing high school. She twice received treatment for chemical abuse when she was fifteen and seventeen years old, and had been arrested for driving without a license. Police were called to Shari's residence on numerous occasions on account of late night parties, dogs barking, and a registered sex offender, who was Shari's friend, being in the home with the young girls. In June 1999, an abuse and neglect report was filed against Shari and a petition for deprivation was proposed, but not filed. Instead, Shari was given an option to be supervised by a social worker from McHenry County Social Services. Shari entered into a contractual agreement requiring her to undergo therapy services, to allow no contact between the children and the registered sex offender, to allow only her children and herself to reside in the home, and to participate in future parent aid services if needed.

[¶ 5] In May 1999, Terry brought a motion to change custody of the younger daughter from Shari to himself. The trial court, after consulting counsel for the parties, appointed Sharon Hauschulz as the custody investigator. Hauschulz recommended custody of the younger daughter be changed from Shari to Terry. After three days of testimony, the trial court found a significant change of circumstances had occurred and granted the motion. Shari appealed.

## II

[¶ 6] Shari argues the trial court erred in accepting the custody investigator's report because the record does not show whether the investigator met the preferred qualifications imposed by N.D.R.Ct. 8.6.

[¶ 7] When Hauschulz was proposed to serve as the custody investigator in this case, Shari's trial counsel did not object.[1] During the pretrial, trial and post-trial proceedings, Shari's counsel also raised no objection about Hauschulz's qualifications. We do not consider questions that were not presented to the trial court and are raised for the first time on appeal. *Overboe v. Farm Credit Serv.*, 2001 ND 58, ¶ 11, 623 N.W.2d 372. Because Shari's counsel did not raise this issue before the trial court, the issue is not reviewable on appeal. *Id.*

## III

[¶ 8] Shari argues the trial court erred in allowing the custody investigator to be excused from the court proceedings, rather than requiring her to be present throughout the three days of hearings. After the custody investigator testified during the first day of hearings, the trial court allowed her to leave the court proceedings for medical reasons. The trial court provided that the investigator could review, if requested by a party, tapes or transcripts of the hearings held outside of her presence, and further provided that she could be recalled as a witness, if requested by a party. Shari did not request the investigator to review the tapes or transcripts, or recall her as a witness.

[¶ 9] Rule 8.6(c), N.D.R.Ct., provides "[a] custody investigator shall attend all

---

1. The appellant was represented by different counsel in the trial court.

court proceedings and shall testify when requested." We reject Terry's contention that, although the custody investigator must attend court proceedings, the investigator need not remain present throughout the entire court proceedings. The obvious purpose of this requirement is to have the investigator hear the testimony of other witnesses and be prepared to testify whether the investigator's opinion has been changed by any additional testimony. However, we decline to adopt Shari's view that the failure to have the custody investigator present throughout the entire proceedings always constitutes reversible error.

[¶ 10] A trial court has great latitude and discretion in conducting a trial and, absent an abuse of discretion, its decision on matters relating to the conduct of a trial will not be set aside on appeal. *See Schaefer v. Souris River Telecomm. Coop.*, 2000 ND 187, ¶ 13, 618 N.W.2d 175; *State v. Boehler*, 542 N.W.2d 745, 747 (N.D. 1996); *Great Plains Supply Co. v. Erickson*, 398 N.W.2d 732, 734 (N.D.1986). Likewise, a trial court has broad discretion in its control of the presentation of evidence. *See Mayo v. Mayo*, 2000 ND 204, ¶ 39, 619 N.W.2d 631; N.D.R.Ev. 611. Although the trial court has broad discretion over the presentation of evidence and the conduct of trial, it must exercise this discretion in a manner that best comports with substantial justice. *See Slaubaugh v. Slaubaugh*, 466 N.W.2d 573, 580 (N.D. 1991). Moreover, we do not construe rules of court to produce absurd or ludicrous results, *Disciplinary Bd. of Supreme Court v. O'Neil*, 326 N.W.2d 879, 882 (N.D. 1982), but we construe them, like statutes, in a practical manner. *See Huber v. Oliver County*, 1999 ND 220, ¶ 16, 602 N.W.2d 710.

[¶ 11] Because unforeseen circumstances may make it impossible for a custody investigator to be present throughout the entire proceedings, we construe N.D.R.Ct. 8.6(c) to allow the court, for good cause, to excuse a custody investigator from attending the entire proceedings, but only if the court makes reasonable accommodations to preserve the parties' right to examine the investigator in light of all of the testimony given. *See generally Quarne v. Quarne*, 1999 ND 188, ¶ 6, 601 N.W.2d 256. Here, the custody investigator's medical problems constituted good cause to deviate from the procedural requirements. The trial court made reasonable accommodations by providing the investigator could review tapes or transcripts of the hearing, if requested by a party to do so, and by providing the investigator could be recalled as a witness, if requested by a party. The custody investigator was not requested to review tapes or transcripts of the hearing and was not recalled by the parties to testify. Consequently, Shari has shown no prejudice resulted from the accommodations made by the trial court. *See Graber v. Engstrom*, 384 N.W.2d 307, 311 (N.D. 1986).

[¶ 12] We conclude the trial court did not abuse its discretion in allowing the custody investigator to be excused from the proceedings after testifying.

## IV

[¶ 13] Shari argues the trial court erred in relying on hearsay information relating to sexual abuse risk factors contained in the custody investigator's testimony and in rejecting contrary evidence supplied by a social worker with a master's degree in clinical social work.

[¶ 14] The custody investigator testified she was told by three unnamed professionals that, although there are no guarantees, there is less chance that the biological parent of a child will sexually

abuse the child than the chance that a nonbiological parent will sexually abuse the child. The social worker testified she was unaware of any research to support that opinion.

[¶ 15] Shari's trial counsel did not make a hearsay objection to the custody investigator's comments, which were given in response to a question by Shari's trial counsel during cross-examination. Moreover, the credibility of witnesses, including expert witnesses, and the weight to be given their testimony are questions of fact subject to the clearly erroneous standard of review under N.D.R.Civ.P. 52(a). *Mayo*, 2000 ND 204, ¶ 24, 619 N.W.2d 631. In this case, the social worker who testified was not formally qualified as an expert witness by the trial court, and was Shari's case manager from McHenry County Social Services. The trial court was not required to accept the testimony of Shari's fellow social worker who was working with and assisting Shari. Shari has failed to establish that the trial court's acceptance of the custody investigator's testimony over the social worker's testimony is clearly erroneous.

## V

[¶ 16] Shari argues the trial court erred in its handling of the prior juvenile court finding that Terry had sexually abused his older, adopted daughter. In November 1994, a juvenile court referee found by clear and convincing evidence that Terry had abused the older daughter in the family home by sexually touching her on four separate occasions in 1992. Shari argues these findings of sexual abuse should create a presumption against Terry having custody of the younger daughter under N.D.C.C. § 14–09–06.2(1)(j).

[¶ 17] There is a rebuttable presumption against awarding custody to a parent who has perpetrated domestic violence. *Cox v. Cox*, 2000 ND 144, ¶ 17, 613 N.W.2d 516. Under N.D.C.C. § 14–09–06.2(1)(j), the presumption against awarding custody to the perpetrator arises in three circumstances: (1) "there exists one incident of domestic violence which resulted in serious bodily injury;" (2) there exists one incident of domestic violence which "involved the use of a dangerous weapon;" or (3) "there exists a pattern of domestic violence within a reasonable time proximate to the proceeding." *Tulintseff v. Jacobsen*, 2000 ND 147, ¶ 9, 615 N.W.2d 129. Sexual abuse can be a form of domestic violence. *See* N.D.C.C. § 14–07.1–01(2). However, unless serious bodily injury resulted or a dangerous weapon was used, N.D.C.C. § 14–09–06.2(1)(j) requires a pattern of abuse to occur "within a reasonable time proximate to the proceeding." Shari concedes that sexual abuse in this case did not result in serious bodily injury, involve the use of a dangerous weapon, or occur within a reasonable time proximate to the proceeding. Shari nevertheless invites this Court to create a rebuttable presumption against custody under N.D.C.C. § 14–09–06.2(1)(m) when a parent has been found to have committed sexual abuse against the child of a family or household member as defined by N.D.C.C. § 14–07.1–01(4). We decline Shari's invitation.

[¶ 18] Our primary objective in construing a statute is to ascertain the intent of the Legislature by looking at the language of the statute itself and giving it its plain, ordinary, and commonly understood meaning. *Overboe*, 2001 ND 58, ¶ 9, 623 N.W.2d 372. We presume the Legislature intended all that it said, and that it said all that it intended to say, and where the statutory language is plain and unambiguous, a court cannot indulge in speculation as to the probable or possible qualifi-

cations which might have been in the mind of the Legislature. *Little v. Tracy*, 497 N.W.2d 700, 705 (N.D.1993). The factors for determining the best interest and welfare of the child are set forth in N.D.C.C. § 14–09–06.2(1), and subdivision m refers only to "[a]ny other factors considered by the court to be relevant to a particular child custody dispute." Subdivision m does not refer to a presumption against custody, as does N.D.C.C. § 14–09–06.2(1)(j). Indeed, the last sentence of N.D.C.C. § 14–09–06.2(1)(j) provides "[a] court may consider, but is not bound by, a finding of domestic violence in another proceeding under chapter 14–07.1," thereby indicating a legislative intention that previous court findings of domestic violence not be given presumptive effect. We refuse to correct what Shari terms a legislative "oversight" by rewriting the presumption statute to cover the circumstances of this case.

[¶ 19] Evidence of domestic violence which is insufficient to trigger the presumption remains a factor to be considered in determining a child's best interest under N.D.C.C. § 14–09–06.2(1). *Holtz v. Holtz*, 1999 ND 105, ¶ 27, 595 N.W.2d 1. The trial court in this case did not err in failing to invoke the presumption against custody based on the older daughter's allegations and the juvenile court referee's findings of sexual abuse by Terry.

## VI

[¶ 20] Shari argues the trial court erred in changing custody of the younger daughter from her to Terry.

[¶ 21] Under N.D.C.C. § 14–09–06.6(6):

> The court may modify a prior custody order after the two-year period following the date of entry of an order establishing custody if the court finds:

a. On the basis of facts that have arisen since the prior order or which were unknown to the court at the time of the prior order, a material change has occurred in the circumstances of the child or the parties; and

b. The modification is necessary to serve the best interest of the child.

Under this statute, the court, in deciding whether to change custody, must consider whether there has been a significant change of circumstances since the original custody decree, and, if so, whether the change requires the court to change custody to serve the best interest of the child. *Anderson v. Resler*, 2000 ND 183, ¶ 8, 618 N.W.2d 480. A material change in circumstances occurs when new facts are presented that were unknown to the moving party at the time the divorce decree was entered. *Mayo*, 2000 ND 204, ¶ 16, 619 N.W.2d 631. A material change of circumstances can occur if a child's present environment may endanger the child's physical or emotional health or impair the child's emotional development. *Holtz*, 1999 ND 105, ¶ 17, 595 N.W.2d 1. The party seeking modification of a custody order bears the burden of showing a change is required. N.D.C.C. § 14–09–06.6(8). The trial court's decision whether a change is required is a finding of fact subject to the clearly erroneous standard of review. *Hendrickson v. Hendrickson*, 2000 ND 1, ¶ 16, 603 N.W.2d 896. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if the reviewing court is left with a definite and firm conviction a mistake has been made. *Mosbrucker v. Mosbrucker*, 1997 ND 72, ¶ 5, 562 N.W.2d 390.

[¶ 22] In a thorough opinion, the trial court detailed its reasons for changing custody. Since the divorce, the youn-

ger daughter has developed attention deficit disorder. The court noted the younger daughter was currently having difficulty in school and had been absent 21.5 days and tardy 35 times during the 1998–1999 school term. Shari had been the subject of a Social Service investigation based on a report of neglect. Investigators found that Shari's home was unclean, the younger daughter had no bed to sleep in, and Shari had been spending time with a convicted child molester.

[¶ 23] The court analyzed the best interest factors under N.D.C.C. § 14–09–06.2(1). The court found love, affection and other emotional ties exist between the younger daughter and both of her parents, and noted the lack of the parties' ability to effectively communicate with each other had resulted in irregular contact between the younger daughter and Terry. The court found the "most relevant factor" in its decision to be the capacity and disposition of the parents to give the child love, affection and guidance, and to continue the education of the child. Because the younger daughter had lived with Shari since her birth, the court found the emotional ties and continuity favored Shari, but the court doubted whether Shari could continue to provide her necessary guidance.

[¶ 24] The court noted law enforcement officers had been summoned to Shari's home on twelve occasions in response to calls about barking dogs, loud noise from parties, and the convicted sex offender being at the home. In summer 1999, a child protection team investigated and found services were required. Shari was asked to keep the convicted sex offender out of their home, have a psychiatric evaluation, provide a bed for the younger daughter, and no longer allow the older daughter to drive without a license. Because Shari was allowing other adolescent children to reside in her home with the older daughter, Shari was also asked to discontinue this practice. The contract Shari signed to avoid a placement of her children through Social Services required her to assure the younger daughter arrived on time to school and to have no contact with the convicted sex offender.

[¶ 25] The custody investigator had reported Shari's home was "chaotic" and a "mess" when she visited. The older daughter, age 17 at the time, was living in the home along with her boyfriend, according to the younger daughter. The older daughter had earlier undergone treatment for alcohol and drug abuse. Her boyfriend was hollering and swearing at the younger daughter and two other young children she was babysitting. At the time of trial, the older daughter was pregnant and living with her boyfriend in Minot. The custody investigator described Terry's home as orderly, clean and well maintained. Terry currently lives with his financee and her two sons.

[¶ 26] In considering whether Terry could provide the guidance necessary, the court addressed the prior juvenile court referee's findings of sexual contact between Terry and the older daughter. The court noted the older daughter's allegations and the referee's findings "make this case very difficult," but found this factor nevertheless weighed in favor of Terry because "he has the more stable home where structure could be provided."

[¶ 27] The court found the length of time the child has lived in a stable and satisfactory environment and the desirability of maintaining continuity weighed against Shari. Although the younger daughter had always lived with Shari, the home was not satisfactory or stable. According to the court, Shari's allowing late night parties and a convicted child molester to be present in the home after the older daughter had alleged sexual fondling

by Terry showed "an inability to make responsible adult decisions as a parent and an inability to put a child's needs before her own." The court found the domestic violence presumption did not apply under the circumstances, and regarding the other statutory factors, ruled they did not favor either party or were inapplicable.

[¶ 28] The court concluded:

Due to the chaotic lifestyle and parenting choices of Shari Selzler [a] material and significant change of circumstances warrants a change of custody in the best interests of [the younger daughter] specifically based on:

1. The inability to get [the younger daughter] to school on time, her absences from school and provide structure for her. The inability to complete her homework.

2. The Plaintiff's association with a convicted sex offender allowing him to be around her two young daughters.

3. The plaintiff allowing her 17 year old daughter to have her boyfriend live at their home with her in her bedroom as well as another juvenile girl.

4. All other factors as previously noted.

This is a most difficult case because the plaintiff has had custody of [the younger daughter] since she was born. [The younger daughter] has a very strong bond with her mother. Yet her mother has been unable to provide the structure and discipline necessary for this child. Because [the younger daughter] has been diagnosed with ADD she has an even greater need for structure than a child without ADD. The defendant on the other hand has this cloud of inappropriate sexual conduct with [the older daughter]. The defendant however does appear to have a more stable home environment at this time. This child deserves an opportunity to have a stable consistent home with appropriate supervision and guidance.

[¶ 29] In this difficult case, the trial court weighed the appropriate factors in reaching its decision to change custody of the younger daughter from Shari to Terry. We conclude the trial court's modification of custody is not clearly erroneous.

## VII

[¶ 30] We have considered Shari's other arguments and deem them to be without merit. The amended divorce judgment is affirmed.

[¶ 31] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.