Submitted on briefs June 21, reversed and remanded July 7, 1972

## STATE ex rel JUVENILE DEPARTMENT OF CLACKAMAS COUNTY, *Respondent, v.* WIESE et ux, *Appellants.*

498 P2d 813

Richard Helgeson, Oregon City, for appellants.

Roger Rook, District Attorney, and Donald D. Welch, Special Deputy District Attorney, Oregon City, for respondent.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

FOLEY, J.

This is an appeal from an order which terminated parental rights under ORS 419.523 (2)(a)① on the grounds that:

"* * * 1) Said child was made a ward of the above entitled Court on June 5, 1970, based upon the findings of the Court that the parents of said child have failed to provide her with the care, guidance and protection necessary for her physical and emotional well-being and have subjected her to cruelty; 2). The parents of said child are unfit by reason of their conduct or condition which is seriously detrimental to said child in that the parents are physically and mentally incapable of providing adequate care for said child because they function at a low intellectual level * * *.

"* * * * * *"

The child has been in the custody of juvenile authorities since February 1970 and in foster care

---

① ORS 419.523(2)(a):

"(2) The rights of the parent or parents may be terminated as provided in subsection (1) of this section if the court finds that the parent or parents:

"(a) Are unfit by reason of conduct or condition seriously detrimental to the child * * *."

since June 5, 1970, when the juvenile court took juris-
diction after a hearing on a petition alleging cruelty
by the parents. The petition was filed after the family
doctor made a report of possible child abuse. Investi-
gation disclosed that the child had a pinworm infec-
tion, diaper rash, and four large bruised areas. The
bruises on the face were several days old and had been
caused by a fall; bruises in the groin area were due
to the infection; the father admitted he had inflicted
the bruise on her arm; and the cause of the fourth
bruise remained unexplained. A letter from the phy-
sician stated:

> "* * * * *
>
> "Although the evidence on examination indicated
> mistreatment, I do not believe these parents are
> malicious child beaters. They do have gross mis-
> conceptions of the type and amount of discipline
> necessary. If it is possible to observe the parents
> and check on them at very frequent intervals, I feel
> that Carol Wiese could be returned to her parents.
> "* * * * *."

The child was described as well nourished on the
date she was admitted to the hospital and had been
receiving regular medical care. The physician testified
at the hearing on the petition that he had seen her
every two or three weeks, sometimes as a patient, and
at other times when the mother brought the baby sister
for treatment.

In contrast, the home environment appears to
have been very poor. Welfare workers described the
house as filthy and cluttered. In an effort to remedy
the conditions in the home the court made the child
a ward of the court and ordered her placed in foster
care, took temporary wardship of the baby sister who
remained in the home, and requested homemaker

assistance for the family. During the time that the homemaker visited the home the mother was able to manage better, but when the homemaker stopped going, conditions reverted to what they had been.

Both parents received psychological evaluation. The father's intelligence was described as "dull normal" and the mother's as "* * * in the lower level of what is called the educable range." Experts testified that the parents are unable to provide consistent guidance to the child and were pessimistic that the situation would improve because the parents did not seem to have enough motivation to change their way of life.

██ We conclude that this case is governed by the Oregon Supreme Court's decision in *State v. McMaster,* 259 Or 291, 486 P2d 567 (1971), which also involved a mentally retarded parent, an erratic life style, and poverty. There the Supreme Court said:

"* * * The best interests of the child are paramount; however, the courts cannot sever the McMasters' parental rights when many thousands of children are being raised under basically the same circumstances as this child. The legislature had in mind conduct substantially departing from the norm and unfortunately for our children the McMasters' conduct is not such a departure." 259 Or at 303-304.

The law, however, does not allow the courts to sever parental rights where the parents are able to care for their children within what has been described as the societal norm, even though "transiency and incapacity, poverty and instability" pervade the relationship. *State v. McMaster,* supra. The trial period with the homemaker proved that the parents were able to care for the baby sister with outside assistance. The case worker predicted that if the child concerned here were to

return to the home, the burden of caring for both children would be overwhelming to the mother; but we have no way of knowing whether this is true at this time.

■ The state distinguishes this case from *McMaster* on the theory that we are concerned here not with conduct but with an unalterable condition of the parties. Relying on this theory, it urges us to apply the reasoning in *State v. Blum,* 1 Or App 409, 463 P2d 367 (1970). But *Blum* concerned a parent with severe and incurable mental illness who would never be able to provide even physical care for her child. The Wieses' situation results from a combination of conduct (failure to provide as healthful an environment as possible under the circumstances of inadequate housing) and conditions (inherent inability to take advantage of the resources that are available in order to stimulate their child to develop into a well-rounded person capable of fulfilling her utmost potential).[9]

The evidence presented here does not clearly satisfy the first criteria of *Blum*:

"* * * [T]hat the parent is presently unable to supply physical and emotional care for the child (if necessary, with the aid of social agencies available) * * *." 1 Or App at 417.

---

[9] The situation does not argue for the award of custody to the parents. To quote again from *McMaster:*

"However, a decision in favor of the natural parents in this termination proceeding does not result in the child being transferred to the custody of her natural parents. We are only deciding that the McMaster's parental rights cannot be terminated at this time. The juvenile court must determine whether custody should remain with the foster parents. If it does, we realize that the foster parents may be kept in a state of anxiety never knowing when the child might be taken from their custody. Nevertheless, we are of the opinion that the natural parents' rights cannot now be terminated." 259 Or at 303.

On the basis of *McMaster* we conclude that the trial court erred in terminating the parental rights.

Reversed.