Filed 8/16/12 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2012 ND 167

Melissa Rudnick f/k/a Melissa Nelson, Plaintiff and Appellant

v.

Kirk D. Rode, Defendant and Appellee

No. 20120076

Appeal from the District Court of LaMoure County, Southeast Judicial District, the Honorable John T. Paulson, Judge.

REVERSED.

Opinion of the Court by Maring, Justice.

Susan L. Ellison, P.O. Box 458, West Fargo, N.D. 58078-0458, for plaintiff and appellant.

Paul C. Murphy, 909 Main Street, Carrington, N.D. 58421-1258, for defendant and appellee.

Rudnick v. Rode

No. 20120076

Maring, Justice.

[¶1] Melissa Rudnick, formerly known as Melissa Nelson, appeals from an amended judgment, modifying residential responsibility of the minor child she has with Kirk Rode.  Rudnick argues the district court erred in entering an ex parte order, the court erred in finding Rode established a prima facie case justifying modification of primary residential responsibility, and the court’s decision to modify residential responsibility was clearly erroneous.  We reverse, holding Rode failed to meet his burden of proof under N.D.C.C. § 14-09-06.6(6) for a modification of residential responsibility.

I

[¶2] Rudnick and Rode have one child together, M.R., who was born in 2004.  In 2005, the district court entered a judgment ordering the parties have joint legal custody and awarding Rudnick primary physical custody.  

[¶3] On September 27, 2010, Rode moved for modification of primary residential responsibility under N.D.R.Ct. 3.2 and moved for an ex parte interim order under N.D.R.Ct. 8.2(a), requesting the court grant him emergency temporary residential responsibility of the child.  Rode filed an affidavit in support of his motions, alleging M.R.’s behavior had changed over time and M.R. was subjected to physical and emotional abuse in Rudnick’s home.  Rode also filed a copy of a letter, which he requested Jenn Grabar, a social worker, prepare about Social Services’ investigation into allegations the child was abused.  The letter states M.R. alleged Rudnick’s husband, Travis Rudnick, spanked M.R., threw the child on his bed, locked M.R. in his room, called M.R. names, and yelled at him.  On September 27, 2010, the district court granted Rode’s motion for an ex parte interim order and ordered Rode have temporary residential responsibility of M.R. and Rudnick have supervised visitation. 

[¶4] On October 8, 2010, Rudnick responded to Rode’s motions and requested oral argument on both motions.  Rudnick secured a hearing date on Rode’s motion under N.D.R.Ct. 3.2 to modify primary residential responsibility.  In responding to Rode’s ex parte motion and the court’s order, Rudnick argued the court failed to comply with N.D.R.Ct. 8.2 and Rode’s affidavit was not sufficient to justify the ex parte interim order.  In responding to Rode’s motion to modify residential responsibility, Rudnick argued Rode failed to establish a prima facie case for modification, there was not a material change of circumstances, and it was not in the child’s best interests to modify residential responsibility.

[¶5] On December 2, 2010, Rudnick moved for interim relief, seeking a hearing on the ex parte order and arguing the court failed to hold a hearing as N.D.R.Ct. 8.2 requires.  On December 15, 2010, a hearing on the ex parte order was held and the court subsequently entered an order giving Rudnick unsupervised parenting time with the child, appointing a parenting investigator, and ordering the ex parte order would remain in full force and effect.

[¶6] An evidentiary hearing was held on the motion to modify primary residential responsibility.  The court received multiple exhibits during the evidentiary hearing, but those exhibits were not included in the record certified to this Court and the district court has been unable to locate them.  On August 12, 2011, the district court entered an order modifying primary residential responsibility, finding there was a substantial change in circumstances and the best interest factors slightly favored Rode.  The court ordered the parties have equal residential responsibility and the court established a parenting time schedule.  An amended judgment was subsequently entered.

II

[¶7] Although we are deciding this case on its merits, we conclude it is necessary to clarify the proper procedure for an ex parte interim order and to address the errors that occurred throughout the proceedings in this case.  Rudnick argues the district court erred when it failed to follow the mandatory procedural requirements of N.D.R.Ct. 8.2 for ex parte interim orders, the court improperly relied on inadmissible hearsay, and the court erred in finding exceptional circumstances existed justifying the issuance of the ex parte order temporarily modifying residential responsibility.

[¶8] Rule 8.2, N.D.R.Ct., provides the requirements for ex parte interim orders in domestic relations cases.  At the time the court entered the ex parte order in this case, Rule 8.2 provided:

(a) Ex Parte Interim Order.

(1) No interim order may issue except upon notice and hearing unless the court specifically finds exceptional circumstances.  Exceptional circumstances include:

(A) Threat of imminent danger to any party or minor child of the party; or

(B) Circumstances indicating that an ex parte order is necessary to protect the parties, any minor children of the parties, or the marital estate.

(2) No ex parte interim order may be issued unless the movant executes an affidavit setting forth specific facts justifying the issuance of the order. 

. . . .

(4) If there has been an appearance in the action by the adverse party, or if the attorney for the moving party has knowledge that the adverse party is represented by an attorney, the attorney for the moving party shall notify the court.  After receiving notice of the appearance or representation, the court shall attempt to hold an emergency hearing, either in person or by telephonic conference, at which both parties may be heard, before issuing any order. . . .

(5) An interim order issued ex parte must provide specifically:

(A) That a hearing upon the necessity for the issuance of the order or the amounts to be paid be held within 30 days of the issuance of the ex parte interim order, unless an earlier hearing is required under N.D.C.C. ch. 14-07.1, or an application for change of venue is pending.  If the ex parte order contains provisions delineated in N.D.C.C. ch. 14-07.1, the hearing must be scheduled in a timely manner to conform with the chapter. 

(B) That the party obtaining the interim order must secure a hearing date and personally serve the interim order and a notice of hearing on the opposing party.

That the hearing on the ex parte interim order may be waived if the party not obtaining the interim order files a written waiver with the court no later than two days before the hearing date.  The written waiver must be served on the party obtaining the ex parte interim order.

(6) The ex parte interim order remains in effect until it is amended following a court hearing.

. . . . 

(e) Submission of Evidence.

. . . . 

(2) 
Affidavit
.  Unless the court otherwise orders, evidence either in support of or in opposition to the interim order must be presented by affidavit.  Evidence presented by affidavit may not be considered unless, at the time of the evidentiary hearing, the party offering the affidavit makes the affiant available for cross examination.

N.D.R.Ct. 8.2 (amended effective March 1, 2011).
(footnote: 1)

[¶9] In this case, Rode moved for an ex parte interim order under N.D.R.Ct. 8.2(a) temporarily modifying residential responsibility for the parties’ child on September 27, 2010.  The district court granted the motion and entered the ex parte interim order on September 27, 2010.   At the time, Rudnick was represented by an attorney in an unrelated domestic relations case.  Rudnick subpoenaed Rode to testify in that case and Rode knew Rudnick was represented by an attorney.  Because Rode knew Rudnick was represented by an attorney at the time he moved for the ex parte order, Rode was required to notify the court and the court was required to attempt to hold an emergency hearing before issuing the ex parte order under N.D.R.Ct. 8.2(a)(4).  We conclude Rode failed to comply with N.D.R.Ct. 8.2(a)(4) and Rudnick was entitled to notice and an emergency hearing, either in person or by telephonic conference, before the ex parte order was issued.

[¶10] Rode and the court also failed to comply with other requirements of N.D.R.Ct. 8.2.  The court’s ex parte interim order must specifically provide that a hearing on the necessity of an ex parte order must be held within 30 days of the issuance of the order.  N.D.R.Ct. 8.2(a)(5).  The moving party is required to schedule the hearing date.  N.D.R.Ct. 8.2(a)(5)(B).  The history for the rule indicates the requirement for a mandatory hearing within 30 days was adopted to address concerns that some parties were using the rule to get a change in residential responsibility based on false allegations without having a hearing.  
Minutes of the Joint Procedure Comm.
 10-11 (September 24-25, 2009).  Here, the ex parte order was issued on September 27, 2010, and did not provide notice that a hearing must be held within 30 days.  In early December 2010, Rudnick requested the ex parte order be quashed because of the failure to hold the required hearing, and the court denied her request.  On December 15, 2010, a hearing on the issuance of the ex parte order was held.   Rudnick was entitled to a hearing on the ex parte order within 30 days of its issuance, and the court erred by failing to provide notice of the hearing requirement and failing to consider Rode’s failure to secure a hearing date within 30 days of the issuance of the ex parte order.

[¶11] Moreover, N.D.R.Ct. 8.2(a)(1) requires the court find there are exceptional circumstances to justify issuing an ex parte order.  Exceptional circumstances include a threat of imminent danger to the parties’ minor child or when the order is necessary to protect the parties’ child.  N.D.R.Ct. 8.2(a)(1).  In other cases, we have said “imminent” means “‘near at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous.’” 
State v. Bruce
, 2012 ND 140, ¶ 10 (quoting 
State v. Kurle
, 390 N.W.2d 48, 49 (N.D. 1986)); 
see also
 
In re R.A.
, 2011 ND 119, ¶ 8, 799 N.W.2d 332; 
Wolt v. Wolt
, 2010 ND 33, ¶ 19, 778 N.W.2d 802.  Generally, evidence supporting the issuance of an order must be presented by affidavit.  N.D.R.Ct. 8.2(e)(2).  “Affidavits must include competent information . . . which usually requires the affiant have first-hand knowledge.”  
See
 
Schumacker v. Schumacker
, 2011 ND 75, ¶ 14, 796 N.W.2d 636.  “‘Affidavits are not competent if they fail to show a basis for actual personal knowledge, or if they state conclusions without the support of evidentiary facts.’”  
Id.
 (quoting 
Ehli v. Joyce
, 2010 ND 199, ¶ 7, 789 N.W.2d 560).  Evidence based on inadmissible hearsay is not competent evidence.  
Schumacker
, at ¶ 15.

[¶12] Here, Rode filed his own affidavit in support of his motion for an ex parte order.  Rode’s affidavit stated he was seeking temporary residential responsibility of the child because of physical and emotional abuse, the child was in imminent danger, and he noted the child’s behavior changed within the last six months to one year.  Rode also submitted a letter which he requested Grabar write about Social Services’ investigation of a report that M.R. had been abused.  Grabar did not submit a sworn affidavit.  Grabar’s letter included allegations M.R. made when she spoke to him as part of the investigation, including that Travis Rudnick spanked him, that he received red marks from the spankings but he no longer had any marks or bruises, that Travis Rudnick yelled at him, that Travis Rudnick threw him on his bed and locked him in his room, and that Travis Rudnick calls him names and makes fun of him when he reads. 

[¶13] Based on Rode’s motion for an ex parte order, the district court ordered the child be placed in Rode’s parental responsibility “due to the danger to the child in the current home and the need to temporarily change residential responsibility for the sake of providing a safe home for the child.”  However, there was not evidence of exceptional circumstances that would justify issuing an ex parte order in the affidavit filed to support the motion. Rode’s affidavit states conclusions but he failed to support his allegations with evidentiary facts.  He claimed the child has been physically and emotionally abused, but he did not allege any facts to support his claim.  His allegation that the child’s behavior has changed in the last six months or one year is not a threat of imminent danger to the child.  Rode’s affidavit alone is not sufficient to justify issuing an ex parte order temporarily modifying residential responsibility.  The court erred in considering Grabar’s letter.  The letter is not a sworn affidavit and it included hearsay statements, which may not be admissible.  
Cf. In re B.B.
, 2007 ND 115, ¶ 8, 735 N.W.2d 855 (child protection service report contained hearsay statements, which were not admissible).  Rode did not submit any other evidence to support his motion.  There was no evidence to support the court’s finding of exceptional circumstances justifying an ex parte order.  We conclude the court erred in issuing the ex parte order. 

III

[¶14] Rudnick argues the district court erred in finding Rode established a prima facie case justifying a modification in residential responsibility.  She claims Rode failed to provide any first hand knowledge of the allegations the child was abused and Rode’s affidavit alone was insufficient.
  Whether the moving party established a prima facie case is a question of law, which is reviewed de novo on appeal.  
Thompson v. Thompson
, 2012 ND 15, ¶ 6, 809 N.W.2d 331.  

[¶15] Section 14-09-06.6, N.D.C.C., governs postjudgment modifications of primary residential responsibility and states:

A party seeking modification of an order concerning primary residential responsibility shall serve and file moving papers and supporting affidavits and shall give notice to the other party to the proceeding who may serve and file a response and opposing affidavits.  The court shall consider the motion on briefs and without oral argument or evidentiary hearing and shall deny the motion unless the court finds the moving party has established a prima facie case justifying a modification.  The court shall set a date for an evidentiary hearing only if a prima facie case is established.

N.D.C.C. § 14-09-06.6(4).  
“‘A prima facie case is a bare minimum and requires facts which, if proved at an evidentiary hearing, would support a change of custody that could be affirmed if appealed.’”  
Thompson
, 2012 ND 15, ¶ 6, 809 N.W.2d 331 (quoting 
Ehli
, 2010 ND 199, ¶ 7, 789 N.W.2d 560).  To determine whether there is a prima facie case, the court considers the parties’ briefs and supporting affidavits without argument or a hearing.  N.D.C.C. § 14-09-06.6(4); 
see also
 
Dufner v. Trottier
, 2010 ND 31, ¶ 15, 778 N.W.2d 586.  The court does not weigh conflicting allegations in affidavits and the affidavits must include competent information, which is usually based on first-hand knowledge.  
Thompson
, at ¶ 6. 

[¶16] In this case, the district court did not find there was a prima facie case justifying modification before holding an evidentiary hearing on Rode’s motion to modify residential responsibility.  Section 14-09-06.6(4), N.D.C.C., requires the court make a finding that the moving party established a prima facie case for modification based on the parties’ briefs and affidavits before holding an evidentiary hearing.  The court did not make the required findings and failed to comply with the N.D.C.C. § 14-

09-06.6(4).  The court erred in holding an evidentiary hearing without finding Rode established a prima facie case justifying modification. 

IV

[¶17] Rudnick argues the district court clearly erred in finding there was a material change in circumstances justifying modification of primary residential responsibility.  She claims the child’s allegations of abuse did not constitute a material change in circumstances and the court failed to find a modification was necessary to serve the child’s best interests. 

[¶18] 
A district court’s decision to modify primary residential responsibility is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous.  
Frison v. Ohlhauser
, 2012 ND 35, ¶ 5, 812 N.W.2d 445.  A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or we are left with a definite and firm conviction a mistake has been made.  
Id.
  We do not reweigh the evidence or reassess a witness’s credibility if there is evidence supporting the court’s finding.  
Id.
 

[¶19] Section 14-09-06.6(6), N.D.C.C., provides a two-step process for postjudgment modifications of residential responsibility when the motion is filed two years after a prior order establishing residential responsibility:

The court may modify the primary residential responsibility after the two-year period following the date of entry of an order establishing primary residential responsibility if the court finds:

a. On the basis of facts that have arisen since the prior order or which were unknown to the court at the time of the prior order, a material change has occurred in the circumstances of the child or the parties; and

b. The modification is necessary to serve the best interest of the child. 

[¶20] The moving party has the burden of proving a material change in circumstances has occurred.  
Frison
, 2012 ND 35, ¶ 5, 812 N.W.2d 445.  “‘A material change in circumstances is an important new fact that was not known at the time of the prior custody decree; however, not every change will be sufficient to warrant a change of custody.’”  
Id.
 at ¶ 6 (quoting 
Siewert v. Siewert
, 2008 ND 221, ¶ 17, 758 N.W.2d 691).  “‘A material change of circumstances can occur if a child’s present environment may endanger the child’s physical or emotional health or impair the child’s emotional development.’”  
Siewert
, at ¶ 17 (quoting 
Selzler v. Selzler
, 2001 ND 138, ¶ 21, 631 N.W.2d 564).
  Evidence of child abuse constituting an environment that endangers the child’s physical or emotional health is a material change in circumstances.  
See
 
Frueh v. Frueh
, 2008 ND 26, ¶ 12, 745 N.W.2d 362; 
Quarne v. Quarne
, 1999 ND 188, ¶ 12, 601 N.W.2d 256. 

[¶21] In this case, the district court found there was a material change in circumstances, stating:

It is clear from the testimony of Ms. Grabar, Ms. Leathers, and to some extent [Rudnick], and Travis Rudnick, [Rudnick’s] husband, that intervention was warranted.  Ms. Grabar confirmed her statements in Exhibit A, [the letter about Social Services’ investigation] attached to [Rode’s] ex parte motion by her in-court testimony.  Ms. Leathers confirmed [the child’s] statements.  The story did not change from Ms. Grabar’s interview to Ms. Leathers’ conversation with [the child]. [Rudnick] documented, to some extent, the spanking of [the child], although she disputes its severity.  Her husband, Travis Rudnick, could not remember if he called [the child] stupid or dumb.  He did acknowledge, in front of the child, that he blamed all of this on the child’s father, [Rode].

. . . .

The Court is satisfied that [the child] told the truth when he spoke to Ms. Grabar and Ms. Leathers.  There was no attempt, upon the part of [Rode], to influence the child in any manner. . . .

While [Rudnick] and her husband are adamant that no abuse occurred, it is suggested that if any of the conduct, described to Ms. Grabar and Ms. Leathers, is found to have occurred that the statements of [the child] are overly exaggerated.  The Court is satisfied with the truth of the statements and finds that the circumstances expressed in those statements constitute a substantial change of circumstances and warrant the Court considering the second prong of inquiry.

[¶22] The court’s finding of a material change in circumstances was based on the allegations the child made while talking to Grabar, including that Travis Rudnick spanked the child leaving red marks and bruises, threw the child on his bed, locked the child in his room, yelled at the child, and called the child names.  However, the only evidence about what the child alleged was in the letter Grabar wrote to Rode about Social Service’s investigation, which was initially filed with the ex parte motion and contains hearsay statements.  
See
 
B.B.
, 2007 ND 115, ¶ 8, 735 N.W.2d 855 (child protection service report contained hearsay, including child’s out-of-court statements).  During the evidentiary hearing, Grabar testified about the child’s behavior while he talked about the allegations, but she did not testify about what the child told her.  Sharon Leathers, the child’s counselor, did not testify at the evidentiary hearing, but the court considered Leathers’ testimony from the hearing on the ex parte order and found her testimony confirmed the child’s allegations.  Leathers, however, did not testify about the details of what the child told her; rather, she testified that the child shared with her the events that lead to him living with Rode and what he felt happened to him.  The child did not testify.  Although Rudnick testified that she has spanked the child, she also testified she has never spanked the child hard enough to leave marks, she has never locked the child in his room or thrown him onto a bed, and she has not seen Travis Rudnick do any of those acts either.  Grabar’s letter was the only evidence detailing the child’s allegations and there was no other evidence presented about other instances of similar actions or abuse.  

[¶23] Furthermore, the child’s allegations alone were not sufficient evidence of a material change of circumstances.  The district court did not find the child was abused.  The court made specific findings about whether there was any evidence of domestic violence and found:

The Court cannot say with certainty that the circumstances that led to these proceedings can be described as domestic violence.  No physical injuries to the child have been reported.  The initial report from Ms. Grabar was staffed, no abuse was found to exist, and no services were required, just recommended.  Most of the recommendations have been followed and completed, except for anger management courses for Travis Rudnick.  He is signed up.  Mr. Rudnick is on probation for forgery and false reporting.  He does present concerns to the Court.  It is sufficient to say that it is inappropriate to call any child stupid or dumb or suggest either.

A parent or other person responsible for a child’s care and supervision is justified in using reasonable force to discipline the child as long as the force does not create a substantial risk of death, serious bodily injury, disfigurement, or gross degradation.  N.D.C.C. § 12.1-05-05(1); 
see also
 
Thompson v. Olson
, 2006 ND 54, ¶ 17, 711 N.W.2d 226; 
Dinius v. Dinius
, 1997 ND 115, ¶ 15, 564 N.W.2d 300 (statute grants parents the right to use reasonable force to discipline their children).  There was no evidence the alleged acts created a substantial risk of death, serious bodily injury, disfigurement, or gross degradation.  There was no evidence of physical injuries to the child or that the child was physically abused.  

[¶24] Rode failed to establish the environment in Rudnick’s home endangers the child’s physical or emotional health.  We conclude the evidence does not support the court’s finding of a material change in circumstances and the finding is clearly erroneous. 

[¶25] 
The court also failed to properly apply the best interest analysis.  We have said, “the court cannot change primary residential responsibility for the child unless it further finds that the modification is necessary to serve the best interests of the child.”  
Gussiaas v. Neustel
, 2010 ND 216, ¶ 12, 790 N.W.2d 476.  To determine whether a modification is in the child’s best interests the court must apply the best interest factors from N.D.C.C. § 14-09-06.2(1).  
Machart v. Machart
, 2009 ND 208, ¶ 11, 776 N.W.2d 795.  The district court must analyze the best interest factors in light of two additional considerations:

First, the best interests of the child factors must be gauged against the backdrop of the stability of the child’s relationship with the custodial parent, because that stability is the primary concern in a change of custody proceeding.  Second, after balancing the child’s best interests and stability with the custodial parent, the trial court must conclude that a change in the status quo is 
required
.  A child is presumed to be better off with the custodial parent, and close calls should be resolved in favor of continuing custody.  A change should only be made when the reasons for transferring custody substantially outweigh the child’s stability with the custodial parent. 

Myers v. Myers
, 1999 ND 194, ¶ 10, 601 N.W.2d 264 (citations and quotations omitted).  “‘The added requirement of showing a change of primary residential responsibility is compelled or required gives some finality to a trial court’s original custody decision and helps ensure that a child is not bounced back and forth between parents as the scales settle slightly toward first one parent and then the other.’”  
Neustel
, at ¶ 12 (quoting 
Lovin v. Lovin
, 1997 ND 55, ¶ 17, 561 N.W.2d 612).  

[¶26] The district court considered and made findings about each of the best interest factors, finding that most of the factors did not favor either party.  After considering all of the factors, the court concluded, “the substantial change in circumstances, coupled with its best interest factor analysis, very slightly favor [Rode], but not enough to give him sole residential responsibility.  Primary residential responsibility will be divided equally between [Rudnick and Rode].” 

[¶27] Although the court made findings about each of the best interest factors, the court failed to weigh the best interest factors against the stability of the relationship between the child and Rudnick.  In its analysis of the best interest factors, the court considered the stability of each parent’s home environment and found:

Had [Rudnick’s] home environment been as sufficient as her testimony describes, there would have been no intervention, no need for social service reports, no need for voluntary recommended services, and no need for two court hearings.  The child has lived most of the first six years of his life with [Rudnick].  He has had significant contact with his father. [Rudnick’s] extended family lives in the LaMoure area, [Rode’s] extended family lives in the Montpelier area. [Rudnick] resides in Jamestown and [Rode] resides in Montpelier.  None of the distances between any two of these places is of any significance.  Both sides of the family are willing to provide support.  This factor favors neither party.

Weighing the best interest factors against the stability of the relationship between the child and parent with primary residential responsibility requires more than making findings about the stability of both parents’ home environments, which the best interest factors already consider; rather, the court must consider the psychological and emotional relationship the child has with the parent with primary residential responsibility.  The court also failed to find a change in residential responsibility is required.  We have said the court should only modify residential responsibility if the reasons for the modification substantially outweigh the child’s stability with the parent with primary residential responsibility.  
Myers
, 1999 ND 194, ¶ 10, 601 N.W.2d 264.  The court found this was a close case, the best interest factors did not greatly favor either party, and the change in circumstances coupled with the best interest factors only slightly favored Rode, but not enough to give him primary residential responsibility.  The court failed to consider the stability of the relationship between the child and Rudnick, that the child is presumed to be better off with the custodial parent and that close calls should be resolved in favor of continuing custody. 

[¶28] We conclude the evidence does not support the court’s finding of a material change in circumstances and the court misapplied the law.  We therefore conclude the court’s decision to modify residential responsibility is clearly erroneous.   

V

[¶29] We reverse the amended judgment modifying residential responsibility.

[¶30] Mary Muehlen Maring

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.

We concur in the result.

Dale V. Sandstrom

Daniel J. Crothers

FOOTNOTES
1:    
Rule 8.2, N.D.R.Ct., was amended, effective March 1, 2011, and currently provides in relevant part:

(a) Ex Parte Interim Order.

(1) No interim order may be issued except on notice and hearing unless the court specifically finds exceptional circumstances. Exceptional circumstances include:

(A) threat of imminent danger to any party or minor child of the party; or

(B) circumstances indicating that an ex parte interim order is necessary to protect the parties, any minor children of the parties, or the marital estate.

(2) No ex parte interim order may be issued unless the moving party executes an affidavit setting forth specific facts justifying the issuance of the order. A restraining and eviction order may not be issued ex parte unless the moving party also appears personally and good cause is shown for issuance of the order.

(3) An ex parte interim order may include provisions relating to temporary parental rights and responsibilities, support and other appropriate expenses, use of real or personal property, restraining, and eviction.

(4) If there has been an appearance in the action by the opposing party, or if the attorney for the moving party has knowledge that the opposing party is represented by an attorney, the attorney for the moving party must notify the court. After receiving notice of the appearance or representation, the court must attempt to hold an emergency hearing, either in person or by telephonic conference, at which both parties may be heard, before issuing any order. The issuance of an order following an emergency hearing will in no manner affect a party's right to a further hearing on the merits of the order as provided in Rule 8.2(a)(5).

(5) An ex parte interim order must specifically provide:

(A) that a hearing upon the necessity for the issuance of the order or the amounts to be paid be held within 30 days of the issuance of the ex parte interim order, unless an earlier hearing is required under N.D.C.C. ch. 14-07.1, or an application for change of venue is pending. If the ex parte interim order contains provisions delineated in N.D.C.C. ch. 14-07.1, the hearing must be scheduled in a timely manner under the chapter;

(B) that the party obtaining the ex parte interim order must secure a hearing date and personally serve the ex parte interim order and a notice of hearing on the opposing party; and

(C) that the hearing on the ex parte interim order may be waived if the opposing party files a written waiver with the court no later than two days before the hearing date. The written waiver must be served on the moving party.

(6) The ex parte interim order remains in effect until it is amended following a court hearing.

(7) An ex parte interim order modifying parenting time may be issued postjudgment.

(8) No ex parte interim order modifying primary residential responsibility may be issued postjudgment.