MOORE, Judge,
dissenting.
On August 27, 2012, Y.R. (“the maternal grandmother”) filed separate dependency petitions in the Houston Juvenile Court (“the juvenile court”), alleging that E1.E. and Ev.E. (“the children”) were dependent because (1) T.C. (“the mother”) had engaged in domestic violence in past relationships, (2) the mother had displayed aggressive behavior in the past, (3) the mother was presently abusing prescription drugs, and (4) the mother had been admitted into the behavioral-medicine unit of a local hospital. The juvenile court awarded the maternal grandmother pendente lite custody of the children. On January 3, 2013, by agreement of the parties, the juvenile court awarded the mother limited weekend visitation with the children to be supervised by the maternal grandmother or the designee of the maternal grandmother. The cases were continued several times for various reasons until the trial was held on December 12, 2013, at which only the mother and the maternal grandmother testified. The juvenile court entered separate judgments adjudicating the children dependent without explanation and awarding their custody to the maternal grandmother. The mother filed post-judgment motions, which the juvenile court denied. The mother now appeals.
Our dependency statutes allow a juvenile court to separate a family based only upon clear and convincing evidence that *926 the child is dependent at the time of the dependency adjudication. See generally V.W. v. G.W., 990 So.2d 414, 417 (Ala.Civ.App.2008). Without clear and convincing evidence regarding a parent’s present inability to properly care for a child, there can be no adjudication of dependency. See generally Hamilton v. State, 410 So.2d 64, 66 (Ala.Civ.App.1982). “Clear and convincing evidence” is
“[ejvidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.”
§ 6 — 11—20(b)(4), Ala.Code 1975. When a parent appeals a dependency adjudication on the ground of the sufficiency of the evidence, this court must review the record to determine whether the juvenile court reasonably could have been clearly convinced that the child was dependent at the time of the adjudication. See generally Ex parte McInish, 47 So.3d 767 (Ala.2008).
The maternal grandmother based her dependency petitions, in part, on an allegation that the mother had engaged in domestic violence with her partners. The record indicates that, in fact, the mother had, in the past, been involved in repeated incidences of domestic violence with several different men. On at least one occasion, the children had been present during a violent domestic dispute, prompting a Georgia child-welfare agency to investigate the family, but the record does not contain any information indicating that the mother had ever failed to protect the children from abuse or domestic violence or that the children had ever been endangered by the domestic violence. The last occasion of domestic violence occurred in or around August 2012, after which the mother separated from her live-in paramour and moved with the children to Dothan to stay with the maternal grandmother.
By the time of the trial in December 2013, the mother was not involved in any romantic relationship, was not planning on developing any romantic relationship, was living alone in a garage apartment in Nor-co, Louisiana, and had not been involved in an episode of domestic violence in over a year. The mother drove to the trial with her male best friend, who she had known since she was 13 years old, and they stayed at a local motel; the record contains no evidence indicating that the mother and her friend were staying in the same room together, that they were engaged in anything other than a platonic relationship, or that they had ever, or were currently, involved in any volatile behavior toward one another. The record contains no expert or other testimony suggesting that, at the time of the dependency dispositions, the mother was prone to violence toward the children or that she represented any current danger to the children because of her past episodes of domestic violence.
As to the second allegation in her dependency petitions, the maternal grandmother presented virtually no evidence indicating that the mother displayed aggressive behavior and did not produce any evidence indicating that the mother had ever displayed such behavior toward the children. The record is devoid of any evidence indicating that, at the time of the dependency dispositions, the mother had uncontrolled or aggressive behavioral problems that would prevent her from properly caring for the children.
The maternal grandmother thirdly alleged that the mother was abusing prescription drugs. The record indicates that the mother has used prescription medication for pain from spinal stenosis and for psychological issues. The maternal grandmother testified that, when she went to get *927 the children in August 2012, she found the mother’s home “filthy” because the mother could not “get it together,” because she was “wiped out” from taking medications. However, the record contains no evidence indicating that the mother had ever misused or abused her prescription medication. The record also indicates, without dispute, that the mother had revised her medication intake based on the advice of her physicians. The maternal grandmother presented no evidence indicating that, at the time of the dependency dispositions, the mother was suffering from any medicinal overuse or abuse that would prevent her from properly caring for the children.
The record indicates that the mother has some form of psychological illness, the exact diagnosis of which was disputed at trial. In August 2012, about 10 days after moving in with the maternal grandmother, the mother was admitted to the behavioral-medicine unit of a local hospital after she had “flashed” a neighbor. The mother spent three or four days in the unit before being released by her doctors. As stated above, the mother followed the advice of her physicians to discontinue certain medications. The mother testified at trial that she was receiving pastoral counseling, but the record does not reveal whether that counseling was prescribed or strictly voluntary and the maternal grandmother has not alleged that the counseling is insufficient in any way to moderate any mental-health symptoms the mother might have. The record contains no further evidence regarding the mother’s mental or emotional status or any evidence indicating that, at the time of the dependency dispositions, her condition prevented her from properly caring for the children at that time.
Rule 25(A) of the Alabama Rules of Juvenile Procedure provides, in pertinent part:
“At the close of the hearing, the juvenile court shall make one of the following findings in writing:
“(1) That the facts alleged in the juvenile petition are true and the child is dependent, in need of supervision, or delinquent; or
“(2) That the facts alleged in. the petition are not proved or that the child is not in need of care or rehabilitation or supervision, in which event the juvenile petition shall be dismissed.”
The juvenile court did check a box on a form to find the children dependent, which suggests that it had concluded that “the facts alleged in the juvenile petition are true.” However, that finding is clearly erroneous as to at least two of the allegations in the petitions and is not conclusive as to two others. The evidence did not sustain the allegations of prescription-drug abuse and aggressive behavior by the mother. The fact that the mother had been involved in domestic violence and the fact that she had been admitted to a behavioral-medicine unit in the past, although proven, did not establish the current dependency of the children. The maternal grandmother did not meet her burden of proving, through clear and convincing evidence, that those past circumstances had rendered the mother unable to properly care for the children and that those factors persisted to such a degree so as to prevent the mother from caring for the children appropriately at the time of the dependency dispositions. See generally M.G. v. Etowah Cnty. Dep’t of Human Res., 26 So.3d 436, 442 (Ala.Civ.App.2009) (“[T]he test [for whether the Department of Human Resources (‘DHR’) has proven dependency in a termination-of-parental-rights case] is whether DHR has presented clear and convincing evidence demonstrating that the parental conduct or condition currently persists to *928 such a degree as to continue to prevent the parent from properly caring for the child.” (footnote omitted) (Per Moore, J., with one judge concurring, one judge concurring in the result, and two judges dissenting)).
A juvenile court may find a child dependent on a ground litigated at trial without objection of the other party if that ground is proven by clear and convincing evidence. T.H. v. Jefferson Cnty. Dep’t of Human Res., 70 So.3d 1236, 1245 (Ala.Civ.App.2010) (Per Moore, J., with two judges concurring in the result and two judges dissenting). In this case, the main opinion maintains that the judgments should be affirmed because
“the trial court could have found from the mother’s own testimony that she had several remaining issues affecting her ability to provide for the care, support, and education of the children and to discharge her responsibilities to and for the children.... At the time of disposition, the mother testified that she had moved away from Alabama to Louisiana and had been living in a one-bedroom garage apartment for approximately seven months. She testified that she had exhausted all of her funds to purchase a car. She testified that she had been at her current employment for four months.... The mother described her relationship with her three siblings as ‘nonexistent.’ The mother admitted that her visits with the children had been rare and that the single trip she had made to Alabama to see the children while they were in the maternal grandmother’s custody was court-ordered; however, she blamed the maternal grandmother for not allowing visits to occur. The mother admitted that she had not provided Christmas or birthday presents for the children during the pen-dency of the cases. Although the mother had not been ordered to pay support to the maternal grandmother for the benefit of the children, the maternal grandmother offered undisputed testimony that the mother had provided no financial support for the children during the 16 months between the filing of the petitions and the date of trial in these matters.”
162 So.3d at 924.
The evidence in the record shows that, at the time of the trial, the mother was, in fact, residing in a one-bedroom garage apartment in Louisiana. However, the maternal grandmother presented no evidence to suggest the inadequacy of that apartment for the children’s shelter needs. The record contains no evidence from which the juvenile court could have inferred that the children would be endangered in any way by residing with the mother in that apartment, assuming the mother maintained that residence, given her testimony that she could relocate if she regained custody of the children. Hence, the juvenile court could not reasonably have found the children dependent based on the nature of the residence of the mother.
The fact that the mother had been living in that apartment for only approximately seven months and the fact that she had often moved in the past also do not support a finding of dependency. In stating that children need stability, the law does not refer to residential stability but, instead, refers to stability in the psychological and emotional relationship a child has with his or her custodial parent. See Rudnick v. Rode, 820 N.W.2d 371, 381 (N.D.2012). In the absence of evidence of a detriment to the child, the fact that a parent frequently changes residences does not, in and of itself, render that parent unfit to parent a child. See generally State ex rel. Juvenile Dep’t of Clackamas *929 Cnty. v. Wiese, 10 Or.App. 73, 76, 498 P.2d 813, 815 (1972) (“The law, however, does not allow the courts to sever parental rights where the parents are able to care for their children within what has been described as the societal norm, even though ‘transiency and incapacity, poverty and instability’ pervade the relationship.” (quoting State v. McMaster, 259 Or. 291, 303, 486 P.2d 567, 573 (1971))); and Rowlett v. Vanderburgh Cnty. Office of Family & Children, 841 N.E.2d 615, 623 (Ind.Ct.App.2006) (“[I]n the matter of raising children, stability of environment is an important factor. However, this in and of itself is not a valid basis for terminating the relationship between the natural parent and the children.”). See also D.M.J. v. D.N.J., 106 So.3d 393, 404-05 (Ala.Civ.App.2012) (Moore, J., dissenting) (“[I]t cannot be inferred that a child’s healthy development is automatically threatened by the residential instability of his or her custodial parent; if that was the case, the courts would have to deny petitions for custody filed by parents whose professions require constant relocation, such as military personnel.”). The maternal grandmother did not even attempt to prove that the children had actually suffered any harm or had been exposed to a threat of any real harm as a result of their frequent dislocations with the mother. The record also contains no evidence indicating that returning the children to the custody of their mother, and thus rejoining them with their primary caregiver since their births, would adversely affect them in any manner. Hence, even if convinced that the mother had not stabilized her residence, the juvenile court could not have relied on that factor to adjudicate the children dependent.
The juvenile court also could not have been clearly convinced of the dependency of the children based on the poverty of the mother. The evidence in the record shows that the mother moved to Louisiana in January 2013, in part, in order to obtain more lucrative employment. She initially secured a job at a bar in New Orleans, which she held from January through February 2013. In mid-February 2013, the mother began working for a pizza restaurant as an assistant manager, a job she held until approximately four months before the trial when she was offered better pay to become an assistant manager at a competing pizza restaurant. Through her consistent employment, the mother was able to accumulate savings, but she had spent those savings on the purchase, of an" automobile. The mother also purchased gifts for the children, which she presented to them the day before the dependency hearing, although not on Christmas day of 2012 or on their birthdays. Nothing in the record indicates that the mother’s current income is inadequate to meet the financial needs of the children, which the maternal grandmother has been meeting despite the fact that she and her husband live solely off of Social Security and workers’ compensation disability benefits amounting to $1,667 per month. Admittedly, the mother had not paid child support for the children during their stay with the maternal grandmother, but the juvenile court had not ordered the mother to pay any child support. Cf. Ala.Code 1975, § 12-15-314(e) (requiring juvenile courts to award child support when placing dependent children with third parties). Thus, the juvenile court could not have inferred that, at the time of the dependency dispositions, the mother lacked the financial means to care for the children based on her not having paid child support.
The mother rarely visited with the children in person while living in Louisiana. However, the maternal grandmother testified that the mother had telephoned the children dozens of times, and the maternal *930 grandmother admitted that, on at least one occasion, she had blocked the mother’s telephone calls to the children following an argument she had with the mother. On one occasion, the mother had also driven the six hours from her home in Louisiana to Dothan to visit with the children, only to have her visitation plans thwarted by the maternal grandmother. When the maternal grandmother took the children to Louisiana, the maternal grandmother, who controlled the mother’s visitation time with the children, allowed the mother only limited interaction with the children. From the evidence regarding visitation, which mainly indicates that logistics and lack of cooperation from the maternal grandmother prevented more extensive contact between the mother and the children, the juvenile court could not have inferred that the mother was, at the time of the dependency dispositions, unable or unwilling to discharge her parental responsibilities to the children.
Finally, I reject the reasoning of the main opinion that the juvenile court could have determined that the children were dependent by rejecting the mother’s testimony indicating that she had rehabilitated herself. 162 So.3d at 923. In dependency cases, the burden rests squarely on the party seeking to prevent reunification of the family to prove by clear and convincing evidence that the conditions causing dependency persist. See Ala.Code 1975, § 12-15-310(b). The law does not place any burden on a parent to prove that he or she has rehabilitated himself or herself. See J.B. v. Cleburne Cnty. Dep’t of Human Res., 992 So.2d 34, 43-57 (Ala.Civ.App.2008) (Moore, J., dissenting). The maternal grandmother candidly testified that she knew nothing of the current living situation of the mother. She called the mother as a witness in order to prove that the mother had not overcome the problems causing the initial dependency of the children. However, the mother did not testify as to any facts that would support a determination that she continued to have any problems that would affect her ability to properly care for the children. Thus, the maternal grandmother did not discharge her burden of proving a prima facie case that the children were dependent such that the burden would have shifted to the mother to prove otherwise.
The Alabama Juvenile Justice Act, § 12-15-101 et seq., Ala.Code 1975, provides that a juvenile court should strive “[t]o reunite a child with his or her parent or parents as quickly and as safely as possible when the child has been removed from the custody of his or her parent or parents,” “with a preference at all times for the preservation of the family.” § 12-15-101(b)(3) & (8), Ala.Code 1975. When the record contains no evidence indicating that parental conduct, conditions, or circumstances currently endanger the health, safety, or welfare of a child, a juvenile court should not be permitted to maintain a separation of the family on the premise that the juvenile court simply does not believe, based on its personal observations, that the parent can resume proper care of the children. The constitutional right to family integrity mandates that only clear and convincing evidence may support the continued separation of a family. See generally Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).
Even if the juvenile court disbelieved the entirety of the mother’s testimony, it could not have kept the children separated from the mother without clear and convincing evidence demonstrating that she was incapable of properly caring for them. In this case, the record contains absolutely no evidence to support a determination that the mother, at the time of the dependency dispositions, was unable to properly care for the children. The judgments can *931 not be affirmed based solely on the evidence regarding the past history of the mother. Therefore, I respectfully dissent.